UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HAYWOOD LEE PULLEY | ) | CASE NO.: 05-34149 |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| ROSALIND PULLEY | ) | AP NO.:   05-3109 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAYWOOD LEE PULLEY | ) | |
| | ) | |
| Defendant(s) | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on the Complaint Objecting to Discharge of Plaintiff Rosalind Pulley ("Pulley") against the Debtor/Defendant Haywood L. Pulley ("Debtor"). The Court considered the testimony and evidence submitted at trial and the arguments of counsel. For the following reasons, the Court enters Judgment in favor of Pulley and finds the debt owed by Debtor to Pulley nondischargeable pursuant to 11 U.S.C. §523(a)(15).

**FACTS**

Pulley and Debtor were married. The parties are currently involved in a dissolution proceeding in the Jefferson Family Court. On July 7, 2005, the Family Court entered an Order requiring Debtor to pay Pulley the following amounts: $1037.21, $687.81 per month as Debtor's portion of the monthly expenses for as long as he lived in the marital residence, $537.70 per month after Debtor vacated the residence, a sum which represented one-half of the mortgage, one-half of health insurance premiums and one-half of life insurance premiums.

On June 20, 2006, Debtor filed his Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code.

Pulley was listed as a creditor on Debtor's Petition. Debtor failed to make any of the payments to Pulley pursuant to the Family Court Order of July 7, 2005.

Debtor vacated the marital residence in July 2005. Pulley made the monthly house payment of $924.74 until it was sold in May 2006. Pulley paid for Debtor's life insurance from July 2005 until December 2005 at a cost of $207.22 per month. Pulley also paid $42.00 every three months for life insurance. This resulted in a debt of $6,366.57 owed by Debtor to Pulley.

Pulley is a 63 year old woman who lives with her sister. She pays rent of $100 per month. She owns rental property worth approximately $65,000, with a $40,000 mortgage on the property. The rental property is in poor condition and in need of repair. She receives $1,700 per month from an annuity she received after retiring from a civil service position which she held for 32 years. She also received $610.00 per month in rental income, but had a $491.74 monthly mortgage payment. The rental income ended in July 2006.

Debtor is 55 years old. He has been employed for 31 years as a surgical technician for Commonwealth ENT. He makes $20 per hour. Debtor has no formal training as a surgical technician, but received on-the-job training. The Medical Licensure Board waived the requirement of formal training and licensing for him based on his years of experience working as a surgical technician. His current income is $2,400 per month, but claims after downsizing he only makes about $1,000 per month. Debtor's current pay stubs, however, did not reflect this downsizing. Prior to that, his yearly salary was $42,000.

Debtor owns two vehicles, a 2000 Isuzu Rodeo and a 1986 Audi. He pays $614 per month for rent. Debtor suffers from diabetes and his foot was amputated in 1993. He takes eight or nine different types of medication per day. Debtor has approximately $7,500 in his pension plan at work. Debtor claims his current debts and health problems make it impossible for him to pay the debt owed to Pulley.

**LEGAL ANALYSIS**

Pulley seeks to have the debt owed to her from Debtor declared nondischargeable pursuant to 11 U.S.C. §523(a)(5) and 11 U.S.C. §523(a)(15). Under §523(a)(5), a debt owed to an ex-spouse in connection with a dissolution of a marriage that is in the nature of alimony, maintenance or support is nondischargeable. In re Sorah, 163 F.3d 397, 400 (6th Cir. 1998). The creditor must show that the parties intended to create a support obligation and that the obligation actually provides necessary support. In re Fitzgerald, 9 F.3d 517, 520 (6th Cir. 1993). After reviewing the July 7, 2005 Order, the Court concludes that the amounts in issue are not truly in the nature of alimony, maintenance or support. The Order divides the debts and expenses between the parties and is more in the nature of a property settlement agreement. Accordingly, the debt cannot be held nondischargeable under §523(a)(5).

The Court must then analyze Pulley's claim of nondischargeability under 11 U.S.C. §523(a)(15). Under this statute, the creditor must prove initially that the debt is (1) not a debt nondischargeable under Section 523(a)(5); and (2) was incurred "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . ..) In re Smither, 194 B.R. 102, 107 (Bankr. W.D. Ky. 1996). Once this burden of proof is met, the burden shifts to the debtor to prove either an inability to pay or that a discharge of the

-3-

debt would result in a benefit to the Debtor that outweighs the detrimental consequences of a discharge to the creditor spouse. 11 U.S.C. §523(a)(15)(A) and (B); Smither, 194 B.R. at 107.

Pulley easily met her burden under Section 523(a)(5) and the burden then shifted to Debtor to establish his entitlement to a discharge under subsection (A) or (B).

The Court must determine whether the Debtor has the ability to pay the obligation in question from property owned by the Debtor after the bankruptcy or future income. Smither, 194 B.R. at 108. First, the Court is required to determine the amount of the obligation that Pulley is seeking the Court hold nondischargeable and the repayment terms and conditions. The Order of July 7, 2005 provided that Debtor pay Pulley $1037.21 plus his share of the monthly expenses for as long as he lived in the marital residence and $537.70 per month after he vacated the residence as well as one-half of the health insurance and life insurance premiums. This resulted in a debt of $6,366.57 owed by Debtor to Pulley.

Second, the Court must calculate the income of the Debtor and the value of any property retained after the bankruptcy. Smither, 194 B.R. at 108. Debtor's current income is approximately $2,400 per month. Although he claims this amount will drop to $1,000 per month there was no clear evidence that such a downsizing had occurred. He also owns two vehicles and his monthly debts include $614 per month for rent. He also has approximately $7,500 in his pension plan at work.

Third, the Court must ascertain the amount of reasonable and necessary expenses the Debtor must incur for the support of himself and his dependents. Smither, 194 B.R. at 108. The Debtor has no dependents. The Debtor's monthly expenses include $614 per month for rent, $231 for utilities, $200 for food, $360 for doctor and medical expenses, $241 for insurance and other miscellaneous expenses totaling approximately $2,395.00. This amount included $300 for transportation. This was

for covers travel expenses to his employer's Evansville, Indiana office. This office has since closed, leaving an extra $300 in his budget.

Fourth, the Court is required to compare the Debtor's current assets and income with the reasonable and necessary expenses to see if the Debtor has the ability to fulfill his obligation to Pulley. Smither, 194 B.R. at 108. The Court is not convinced that Debtor does not have the resources and ability to repay the debt. In fact, Debtor has sufficient funds in his pension plan with his employer to pay Pulley's debts in full. The amount of the debt owed to Pulley is not overwhelming. Debtor's current income allows him to meet his living expenses and there is no reason to believe that his income will decrease in the near future. The Court concludes that Debtor has sufficient resources available to repay the debt to Pulley.

Even if the Court finds that Debtor has the ability to pay the debt, the Court may still discharge the obligation if Debtor proves, by a preponderance of the evidence, that the discharge of the debt would result in a benefit to him that outweighs the detrimental consequences to the former spouse. Smither, 194 B.R. at 110. In applying the standard, the Court must review both the Debtor and Pulley's financial status and standard of living and determine which party would suffer more based on the Court's decision in the case. See, In re Molino, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998).

In making this determination, the Court should consider these factors: the amount of the debt and the payment terms; the current income and expenses of the debtor, creditor and respective spouses; the current assets and liabilities of the debtor, the creditor and spouses; the amount of debt which will be discharged in the bankruptcy; the health, job skills, age and education of the debtor, creditor and spouses; the age and any special needs of the dependents of the debtor, creditor and

spouses; any changes in the financial conditions of the debtor and creditor since the entry of the decree; whether the creditor is eligible for bankruptcy relief; and whether the parties have acted in good faith in the filing of the bankruptcy and in the litigation of the 11 U.S.C. §523(a)(15) issue. See, Smither, 194 B.R. at 111.

The Court already addressed a number of these factors in analyzing the Debtor's ability to repay the debt. While Debtor is not in the best of health, he is able to continue his employment and has been found exempt from the licensing procedure of the medical board due to his extensive on-the-job training. In contrast, Pulley is retired and living off of her pension. She is currently not in the work force. Pulley testified that she expended her savings in paying the mortgage and other related expenses that Debtor failed to pay under the Family Court's Order of July 7, 2005.

The final element for consideration is the good faith of the parties. Smither, 194 B.R. at 111. Pulley demonstrated her good faith by continuing to make the Debtor's share of the mortgage payment despite the fact that Debtor did not make any of the payments ordered by the Family Court. She also assisted the Debtor by paying his medical insurance and life insurance premiums despite the fact he was ordered by the Family Court to pay these amounts also.

Debtor, however, admits that he owes the debt to Pulley. He also acknowledges that he has funds in his pension plan at work that could be used to pay Pulley. At trial he offered to pay her funds from the sale of the marital residence that are currently in the closing attorney's escrow account. These funds, however, already belong to Pulley since she had made the mortgage payments. Despite Debtor's testimony that his work hours were going to be limited to one day per week, his most recent pay stubs did not support this fact. The Court finds that Defendant lacked credibility and good faith.

Debtor failed to meet his burden of proving that the benefit of the discharge of this debt outweighs the detrimental consequences to Pulley. The Court finds that the Debtor has the ability to repay the debt of $6,366.57 owed by Debtor to Pulley. Having considered all of the factors articulated in <u>Smither</u> and the balancing of the parties hardships, the Court determines that the debt is nondischargeable pursuant to 11 U.S.C. §523(a)(15).

## **CONCLUSION**

For all of the above reasons, the Court finds in favor of the Plaintiff Rosalind Pulley on the Complaint Objecting to Discharge Against the Defendant/Debtor Haywood L. Pulley. A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.